UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| GABRIEL SANTACRUZ,<br><br>Plaintiff<br><br>v.<br><br>CHARLES DANIELS, et al.,<br><br>Defendants | Case No.: 2:23-cv-00258-APG-BNW<br><br>**Order Denying Plaintiff's Motion for Injunctive Relief**<br><br>[ECF No. 2-2] |

Plaintiff Gabriel Santacruz is an inmate currently housed at Southern Desert Correctional Center (SDCC), a facility of the Nevada Department of Corrections (NDOC). Santacruz alleges that he suffers from neurological foot drop; claw toe; his right leg being shorter than his left leg; extreme nerve damage pain in his leg, back, neck, and foot; chronic constipation; and paranoid schizophrenia. ECF No. 6 at 3. He claims that for "the past six years in SDCC [he] has been denied proper medical care," and all his conditions have worsened and further injured him. *Id.* at 2. He asserts claims under the Eighth Amendment and the equal protection clause against various NDOC medical providers and an assistant warden.

Santacruz requests an injunction to "provide [him] with the medical care prescribed to [him] by the outside doctors, specialist" without further specifying what treatment he is seeking. ECF No. 2-2 at 5. His first amended complaint (FAC) states that he did not receive Linzess, a drug prescribed for his constipation, and that he has been denied corrective procedures for his leg length difference and foot drop. *See* ECF No. 6 at 3, 5. Construing his documents liberally, I presume this is the specific care that he requests. I deny these requests because he has not shown

irreparable harm if he does not receive Linzess, and because he has not shown that he is likely to succeed on the merits of his leg or foot issues.

Santacruz also requests the defendants provide him with medical care that "conforms with the actual free world standards" and is "compatible with the concept(s) of human dignity." ECF No. 2-2 at 5-6. I deny these requests because they are not narrowly tailored. Lastly, Santacruz requests that the defendants "stop their overt discrimination(s) against plaintiff" based on his disabilities. I deny this request because his FAC does not have a claim based on the Americans with Disabilities Act (ADA), so he is unlikely to succeed on the merits of this claim.

# I. LEGAL STANDARDS

## A. Injunctive Relief

The legal standard for a temporary restraining order is substantially identical to the standard for a preliminary injunction. *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). To obtain a preliminary injunction, a plaintiff must demonstrate: (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm, (3) the balance of hardships favors the plaintiff, and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Alternatively, under the sliding scale approach, the plaintiff must demonstrate (1) serious questions on the merits, (2) a likelihood of irreparable harm, (3) the balance of hardships tips sharply in the plaintiff's favor, and (4) an injunction is in the public interest. *All. For the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). Under either test, a preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (simplified). Mandatory injunctions that order a party to take specific action are "particularly disfavored, and

should not be issued unless the facts and law clearly favor the moving party." *Anderson v. United States*, 612 F.2d 1112, 1114 (9th Cir. 1979) (simplified).

The Prison Litigation Reform Act of 1995 (PLRA) further restricts the availability of injunctive relief concerning prison conditions. *Armstrong v. Newsom*, 58 F.4th 1283, 1293 (9th Cir. 2023). I cannot grant injunctive relief unless I find "that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." *Id.* (quoting 18 U.S.C. § 3626(a)(1)(A)).

**B. Eighth Amendment**

The Eighth Amendment prohibits the imposition of cruel and unusual punishment and "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (quotation omitted). "It is settled law that deliberate indifference to serious medical needs of prisoners violates the Eighth Amendment." *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996) (citing *Estelle*, 429 U.S. at 104). "First, the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quotation omitted). "Second, the plaintiff must show the defendant's response to the need was deliberately indifferent" by showing "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Id*.

"Indifference may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Id*. (quotation omitted). When a prisoner alleges that deliberate indifference is shown by

the delay of medical treatment, the prisoner must show that the delay led to further injury. *See Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985) (holding that "mere delay of surgery, without more, is insufficient to state a claim of deliberate medical indifference"). If the prison's medical staff is not competent to examine, diagnose, and treat inmates' medical problems, they must "refer prisoners to others who can." *Hoptowit v. Ray*, 682 F.2d 1237, 1253 (9th Cir. 1982), *abrogated on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995). "A mere difference of medical opinion is insufficient, as a matter of law, to establish deliberate indifference." *Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004) (simplified). "Rather, to prevail on a claim involving choices between alternative courses of treatment, a prisoner must show that the chosen course of treatment was medically unacceptable under the circumstances, and was chosen in conscious disregard of an excessive risk to the prisoner's health." *Id.* (simplified).

### C. Equal Protection

The Equal Protection Clause of the Fourteenth Amendment is essentially a direction that all similarly situated persons be treated equally under the law. *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To state an equal protection claim, a plaintiff must allege facts demonstrating that the defendants acted with the intent and purpose to discriminate against him based upon membership in a protected class, or that the defendants purposefully treated him differently than similarly situated individuals without any rational basis for the disparate treatment. *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001); *see also Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). A plaintiff may assert an equal protection claims under a "class of one" theory, where the plaintiff alleges that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the

difference in treatment." *Olech*, 528 U.S. at 564. A "class-of-one plaintiff must be similarly situated to the proposed comparator in all material respects." *SmileDirectClub, LLC v. Tippins*, 31 F.4th 1110, 1123 (9th Cir. 2022).

## II. DISCUSSION

Santacruz contends the defendants have been deliberately indifferent to his serious medical needs. He argues that his medical conditions and suffering were known to the defendants because he reported his conditions upon entering NDOC custody and because he has written numerous kites to the defendants. He argues that the lack of adequate treatment has caused him extreme pain and that he could suffer the "complete loss of his foot or leg" if professional care is not provided immediately. ECF No. 2-2 at 4. He alleges that he "was prescribed a [sic] special surgeries/medical diets, and several medications to treat his numerous illnesses after being diagnosed several years ago" but had "little to [no] success with receiving any of the afore-stated" care. *Id.*

The defendants respond that Santacruz cannot establish a likelihood of success on the merits for either of his claims. They argue his claims are barred by the two-year statute of limitations; he has not shown deliberate indifference because his medical records show that he receives extensive care; and he has not shown that the other inmates who allegedly received a procedure that he was denied are similarly situated to him. They provide an exhibit containing Santacruz's "Relevant Medical Records" but do not provide any medical records after June 24, 2022.[1] *See* ECF Nos. 19-1; 17 at 11.

---

[1] The defendants provided over 600 pages of medical records in no discernable order. Unexplained, unorganized exhibits do not assist me in resolving issues. The defendants also do not explain why they did not provide records from after June 24, 2022, even though Santacruz filed his complaint in this case in February 2023. *See* ECF Nos. 2, 4.

5

### A. Request for Medical Care Prescribed by Outside Doctors and Specialist

Santacruz first requests that the defendants provide him with the care prescribed by "the outside doctors" and "specialist." ECF No. 2-2 at 5.  He alleges that he was "prescribed specific treatments and surgeries by medical doctors whom are specialist[s] in their [respective] fields," that this medical care is "necessary," and defendants "have failed and or refused to provide" this care. *Id.* at 7-8.  He alleges that he could "suffer the complete loss of his foot or leg" if the defendants fail to "take corrective medical measure[s] now." *Id.* at 4.  His motion does not name the allegedly prescribed treatments, but based on the allegations in his FAC I infer that he wants to receive 1) Linzess, a prescription drug, and 2) corrective procedures for the leg length difference or foot drop.[2]  *See* ECF No. 6 at 3, 5.

#### 1. *Linzess*

Santacruz alleges that a specialist prescribed him Linzess "for his stomach problems," but defendant Betty Omandac denied him that drug "because 'the state does not provide that.'" ECF No. 6 at 3.  The defendants argue that Santacruz has not been prescribed Linzess recently, and that he has requested and taken other constipation remedies. ECF No. 17 at 8.

Santacruz's medical records show that he kited about stomach pain and chronic constipation in September 2017 and March 2018, and specifically noted that his current medication, including milk of magnesia, does not always help. ECF No. 19-1 at 174, 138.  In May 2018, he had a diagnostic exam for his constipation and the result was an "[u]nremarkable abdomen radiograph." *Id.* at 601.  In March 2019, he was referred to a "GI specialist" after

---

[2] Because Santacruz was pro se at the time he filed his motion and FAC, I construe his documents liberally. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  This rule is "particularly important in civil rights cases." *Pouncil v. Tilton*, 704 F.3d 568, 575 (9th Cir. 2012) (quotation omitted).

complaints of diarrhea and constipation. The specialist diagnosed him with altered bowel function and ordered a colonoscopy, which he received in August 2019. *Id.* at 397, 400, 405, 491. At the follow up appointment after the colonoscopy on September 3, 2019, the outside gastroenterology doctor prescribed Linzess for 30 days to treat the altered bowel function. *Id.* at 474-75, 477, 480. Although the medical record is not entirely clear, it appears that an NDOC doctor requested Linzess for Santacruz as a non-formulary drug request, but a committee denied it and an NDOC doctor prescribed him "MOM" instead. *See id.* at 476, 544. He continued to receive milk of magnesia prescriptions through 2020 and 2021. *See, e.g., id.* at 289, 296, 385, 387.

I am concerned by the fact that NDOC referred Santacruz to an outside specialist but then denied him the treatment prescribed by that specialist. The defendants have not explained why the alternative drug is medically acceptable under the circumstances. However, I deny injunctive relief as to receiving Linzess because Santacruz has not alleged or shown that he will suffer irreparable harm if he does not receive it. He alleged only extreme back and neck pain and that he could suffer the loss of his foot or leg, whereas Linzess was prescribed by a gastroenterologist to treat altered bowel function.

### 2.  *Leg Length Difference or Foot Drop*

Santacruz alleges that he has written many kites since 2017 to "correct [the] difference between [his] two legs, to no avail" but "6 years later . . . [he] was finally referred to [a] specialist who is doing the minimum." ECF No. 6 at 5. He knows of "two people with neurological foot drop like [him]" who "were treated at a reasonable time." *Id.* Santacruz alleges that "[t]hey received their shoes, etc." *Id.* He alleges that defendant Omandac "denied [him] . . . for this procedure while she approved" another inmate's procedure. *Id.* Santacruz does not

"understand why [he's] being denied treatment afforded to other inmates." *Id.*  He claims that if he was afforded that treatment, "it would have corrected the length issue and the foot drop issue, therefore preventing back and neck damage" and other pain. *Id.*  The defendants argue that though they cannot disclose the health information of other inmates, it is likely that Santacruz's medical circumstances are different than those of the other inmates. ECF No. 17 at 9.  The defendants also argue that Santacruz's neurological foot drop is "self-diagnosed." *Id.* at 2, 8.

It is unclear why the defendants refer to Santacruz's foot drop as self-diagnosed.  His medical records show that many NDOC medical providers have recognized that Santacruz has a foot drop and nerve damage. *See, e.g.,* ECF No. 19-1 at 399, 444, 462, 465, 466, 485.  At a previous NDOC facility, doctors prescribed and Santacruz received ankle braces and special shoes from an outside vendor for his foot drop. *Id.* at 443, 465, 466.  When Santacruz was transferred to SDCC in January 2017, he had a brace, special shoes, and "foot/ankle support" as medical devices. *Id.* at 462.  At SDCC, in April 2017, a doctor again prescribed him an ankle brace and specialty shoes for his foot drop. *Id.* at 444.  Santacruz received outside-vendor shoes in July 2017. *Id.* at 154, 460.  In February 2018, a doctor prescribed and Santacruz received a cane in response to his complaints of pain and difficulty walking due to his leg length difference. *Id.* at 461, 525.  In September 2020, a doctor conducted a diagnostic exam of his spine and found that "alignment is within normal limits." *Id.* at 599.  In December 2021, a doctor ordered that it was "medically approved [for Santacruz] to obtain outside vendor shoes" because "RLE is shorter than LLE" and "foot drop." *Id.* at 450.  Santacruz received another pair of outside-vendor shoes in December 2021. *Id.* at 449, 514.  In addition, between 2017 and 2020 Santacruz regularly received "IBU pain pack" prescriptions. *Id.* at 289, 297, 333, 338.

Nevertheless, it is unlikely that Santacruz can show deliberate indifference as to his leg length difference or foot drop. Multiple medical providers have seen Santacruz for this condition and have prescribed him foot and ankle braces, special shoes, and a cane, but not a surgical procedure. He has not pointed to any evidence that these treatment methods are medically unacceptable under the circumstances. Therefore, Santacruz is unlikely to show that the defendants failing to provide a corrective procedure is medically unacceptable, rather than a mere difference of medical opinion.[3]

Santacruz has also not shown a likelihood of success on his equal protection claim. Because Santacruz does not allege that he is part of a protected class, I apply the "class of one" rule. Santacruz does not allege what treatments or procedures the other inmates received except that they "received their shoes, etc." ECF No. 6 at 5. However, Santacruz also received outside-vendor shoes, as well as braces, a cane, a diagnostic study of his neck and back, and IBU pain packs. Santacruz does not allege with specificity how long it took the other inmates to be treated compared to how long it took him to be treated. Nor does he allege that the other two inmates have a leg length issue. Thus, Santacruz has not shown that he is likely to succeed in showing that the other inmates are similarly situated to him in all material respects or that he was treated differently.

It appears unlikely for Santacruz to succeed on either his Eighth Amendment or equal protection claims, so I deny his request for injunctive relief as to receiving corrective procedures for his leg length issue or foot drop.

---

[3] The medical records submitted by the defendants may not be complete because they have not provided any records after June 24, 2022. If evidence exists that supports Santacruz's allegation that he was prescribed specific procedures that have been denied or delayed, he may file another properly supported motion for injunctive relief.

### B. Requests for Adequate Medical Care

Santacruz also requests injunctive relief to have defendants "conform with the actual free world standards of medical care" and "provide [him] with medical care compatible with the concepts of human dignity." ECF No. 2-2 at 5-6. These requests are not narrowly drawn, so I deny these generalized requests based on the standard set by the PLRA.

### C. Request to Stop Discrimination

Santacruz also requests injunctive relief to have the defendants "stop their overt discrimination against [him]" as a disabled person in violation of the ADA. ECF No. 2-2 at 5. However, Santacruz's original ADA claim was dismissed. ECF No. 5 at 9. He did not assert an ADA or disability discrimination claim in his FAC, which is now his operative complaint. *See* ECF Nos. 6; 7 at 8. Therefore, there is no likelihood of success on the merits of an ADA claim so I deny this request.

## V. CONCLUSION

I THEREFORE ORDER that plaintiff Santacruz's motion for injunctive relief **(ECF No. 2-2) is DENIED**.

DATED this 24th day of January, 2024.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE