UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| GABRIEL SANTACRUZ, | Case No.: 2:23-cv-00258-APG-BNW |
| Plaintiff | **Order Granting in Part Defendants' Motions to Dismiss and Granting Plaintiff's Motion to Extend Time** |
| v. | |
| CHARLES DANIELS, et al., | [ECF Nos. 52, 69, 78] |
| Defendants | |

Plaintiff Gabriel Santacruz is an inmate in the custody of the Nevada Department of Corrections (NDOC) and housed at Southern Desert Correctional Center (SDCC). He sues various NDOC officials for two claims of deliberate indifference to his serious medical needs under the Eighth Amendment of the U.S. Constitution and Article I, Section 6 of the Nevada Constitution. In count one of the second amended complaint (SAC), he alleges that the defendants were aware of his conditions related to foot drop and uneven leg lengths, but they continued to give him only superficial treatment that did not alleviate his worsening pain despite knowing the treatment was ineffectual. Count two alleges that the defendants knew about Santacruz's gastrointestinal disease and knew that an outside specialist had prescribed Linzess, but they denied Santacruz this medication even after it became clear that other treatment was ineffective.

Defendant Betty Omandac (B. Omandac) moves to dismiss the second amended complaint on a variety of grounds, including qualified immunity, statute of limitations, failure to exhaust administrative remedies, and failure to state a claim. ECF No. 52. After B. Omandac moved to dismiss, the Nevada Attorney General's Office accepted service for defendants Terence Agustin, Henry Landsman, Ronald Oliver, Symour Omandac (S. Omandac), Kenneth

Williams, and Francisco Sanchez. ECF Nos. 66; 79. These defendants also move to dismiss, raising similar arguments. ECF Nos. 69; 80. Santacruz opposes both motions and requests leave to amend if I grant the motions.

The parties are familiar with the facts, so I repeat them here only as necessary to resolve the pending motions. I grant in part the defendants' motions to dismiss. I dismiss count one against Oliver and count two against Landsman, with leave to amend. I deny the motions in all other respects.

**I. MOTIONS TO DISMISS (ECF Nos. 52, 69)**

In considering a motion to dismiss, I take all well-pleaded allegations of material fact as true and construe the allegations in a light most favorable to the non-moving party. *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1096 (9th Cir. 2017). However, I do not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Navajo Nation v. Dep't of the Interior*, 876 F.3d 1144, 1163 (9th Cir. 2017) (quotation omitted). A plaintiff must make sufficient factual allegations to establish a plausible entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Such allegations must amount to "more than labels and conclusions, [or] a formulaic recitation of the elements of a cause of action." *Id.* at 555.

**A. Qualified Immunity**

The defendants argue that they are entitled to qualified immunity because Santacruz has alleged a delay in providing treatment without also alleging that the delay led to further injury. They also argue that Santacruz alleges only a difference in medical opinion about how to treat his conditions, not deliberate indifference. And they assert that no clearly established law put them on notice that their conduct was unlawful because at most Santacruz alleges medical negligence.

Santacruz responds that he has adequately alleged that the defendants knew of his serious orthopedic medical needs, he repeatedly sent medical kites informing them of his pain and requesting treatment, and he had several falls due to his condition. He argues that despite this, the defendants did not provide effective treatment, instead adjusting his orthopedic equipment even though those adjustments were ineffective. Santacruz contends that the mere fact that the defendants provided some treatment does not automatically defeat a deliberate indifference claim. And he asserts that he adequately alleged additional injury because he alleged his conditions were progressively worsening, he suffered falls, and experienced increased pain and lack of mobility. Finally, he argues that if he states a valid Eighth Amendment claim, then the law is clearly established that deliberate indifference to a serious medical need violates the Constitution.

I note at the outset that qualified immunity does not apply to Santacruz's claims under the Nevada Constitution. *See Mack v. Williams*, 522 P.3d 434, 451 (Nev. 2022) (en banc) ("[Q]ualified immunity, as that doctrine is understood under federal law, is not a defense available to state actors sued for violations of the individual rights enumerated in Nevada's Constitution."). Thus, any references to qualified immunity apply only to the federal claims under 42 U.S.C. § 1983.

In ruling on a qualified immunity defense, I consider whether the complaint, viewed in the light most favorable to Santacruz, plausibly alleges the defendants' conduct violated a constitutional right. *Sorrels v. McKee*, 290 F.3d 965, 969 (9th Cir. 2002). If it does, I then determine whether the right was clearly established at the time of the alleged conduct. *Id.* Santacruz bears the burden to show that the right at issue was clearly established. *Id.* I may perform this two-step inquiry in any order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

"A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (simplified). The plaintiff does not need to identify "a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* I make this second inquiry "in light of the specific context of the case, not as a broad general proposition." *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part on other grounds by Pearson*, 555 U.S. at 236-244. I must avoid addressing qualified immunity at a high level of generality. *Ashcroft*, 563 U.S. at 742. Rather, I must consider the specific facts of the case and determine whether an official would know his or her actions violated clearly established law in those particular circumstances. *City of Escondido, Cal. v. Emmons*, 585 U.S. 38, 43-44 (2019). "Qualified immunity is an immunity from suit rather than a mere defense to liability," so if the defendants are entitled to qualified immunity, my analysis stops there. *Pearson*, 555 U.S. at 237 (quotation omitted).

"To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Chudacoff v. Univ. Med. Ctr. of S. Nev.*, 649 F.3d 1143, 1149 (9th Cir. 2011). The defendants concede they acted under color of law, so the remaining questions are whether Santacruz has plausibly alleged they violated his Eighth Amendment rights and, if so, whether those rights were clearly established.

The Eighth Amendment[1] prohibits the imposition of cruel and unusual punishment and "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (quotation omitted). A prison official violates the Eighth Amendment when he acts with deliberate indifference to an inmate's serious medical needs. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). "To establish an Eighth Amendment violation, a plaintiff must satisfy both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012), *overruled on other grounds by Peralta v. Dillard*, 744 F.3d 1076, 1083 (9th Cir. 2014).

To establish the first prong, "the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quotation omitted). A medical need qualifies as serious when the inmate has: (1) an injury "that a reasonable doctor or patient would find important and worthy of comment or treatment," (2) a "medical condition that significantly affects an individual's daily activities," or (3) "chronic and substantial pain." *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992), *overruled in part on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc). Where the claim of medical indifference stems from an alleged delay in receiving medical treatment, the prisoner must show that the delay led to further injury. *See Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985) (holding that "mere

---

[1] The parties do not distinguish between the federal and state law claims in terms of the elements necessary to show a constitutional violation, so I do not either.

5

delay of surgery, without more, is insufficient to state a claim of deliberate medical indifference").

To satisfy the deliberate indifference prong, a plaintiff must show "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Jett*, 439 F.3d 1096. "Indifference may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Id.* (quotation omitted). "A prison official is deliberately indifferent under the subjective element of the test only if the official knows of and disregards an excessive risk to inmate health and safety." *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (quotation omitted). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

### 1. Serious Medical Needs

Prior to his incarceration, Santacruz was shot in the leg, ultimately resulting in foot drop, claw toes, a discrepancy between the length of his legs that prevents him from walking normally, and chronic pain. ECF No. 47 at 1, 5. He was also shot in the shoulder, resulting in chronic pain and lack of shoulder mobility. *Id.* The defendants concede that Santacruz has serious medical needs related to his foot drop, claw toes, and leg length discrepancy. *See* ECF Nos. 52 at 11; 69 at 11. Additionally, Santacruz alleges he has been seen by NDOC medical providers and an outside gastrointestinal specialist for abdominal pain and chronic constipation, so he has plausibly alleged that his gastrointestinal issues are likewise serious medical needs. ECF No. 47 at 2, 13.

Santacruz also has plausibly alleged that failure to treat his conditions resulted in the unnecessary and wanton infliction of pain and further injuries. He alleges that he suffered prolonged and worsening pain, and that he injured himself when he fell twice. *See* ECF No. 47 at 1-2, 6-7, 9-10, 17. That is sufficient at this stage of the proceedings. *See McGuckin*, 974 F.2d at 1062 (stating that the "unnecessary continuation of [the plaintiff's] condition and pain caused him 'harm' upon which a § 1983 claim can be based").

### 2. Deliberate Indifference

#### a. Foot Drop, Claw Toes, and Leg Length Discrepancy

##### i. Sanchez, Landsman, Agustin, B. Omandac, and S. Omandac

Santacruz was transferred to SDCC in January 2017.[2] ECF No. 47 at 5. He alleges that medical providers at NDOC have known about his medical issues throughout his incarceration because his medical records document these issues and because he "has consistently notified them of his worsening pain and symptoms and other acquired conditions." ECF No. 47 at 2, 5-6. He also regularly advised providers that the orthopedic equipment they gave him was "often not the correct size" and "frequently broke." *Id.* at 7.

In 2018, Santacruz "began to regularly communicate that he was in severe and worsening pain related to his foot and shoulder," including that he was having trouble walking, was in serious pain, his foot hurt every day, and he had developed claw toes. *Id.* In July 2020, Santacruz fell "notwithstanding his orthopedic equipment," and suffered neck and back pain as a result. *Id.* He fell again the next month, suffering back and neck pain and injuring his right leg. *Id.* In August 2020, his back pain was so severe, he requested to see a back specialist. *Id.*

---

[2] The SAC contains some allegations pre-dating Santacruz's transfer to SDCC. However, those allegations do not relate to any of the named plaintiffs, so I do not address them in this order. *See* ECF No. 47 at 6-7.

Santacruz alleges that despite knowing about the worsening nature of his condition, including his falls, the medical providers only adjusted his orthopedic equipment "[d]espite the obvious ineffectiveness" of those adjustments, and refused to consider other treatment, such as injections, physical therapy, and surgery. *Id.* at 8. They also did not refer him to a specialist. *Id.*

According to the SAC, NDOC physicians Sanchez, Landsman, and Augustin examined Santacruz at various points. Sanchez treated Santacruz from 2017 to 2020; Landsman treated him in 2018 and 2019; and Agustin treated him in 2020 and 2021, including shortly after the August 2020 fall. *Id.* at 8. Santacruz alleges that each of these defendants knew of his injuries and ongoing pain but did not refer him to a specialist or "otherwise direct any effective treatment." *Id.* B. Omandac and S. Omandac are NDOC nurses who saw Santacruz multiple times beginning in 2019. *Id.* at 9. These nurses "were responsible for referring medical issues to the Utilization Review Panel (URP)," which is "a group of physicians and medical providers at NDOC, including the medical director, who are responsible for approving referrals to specialists and outside care." *Id.* The SAC alleges that B. Omandac and S. Omandac knew of Santacruz's chronic issues, worsening pain, and "recent injuries," but did not refer him to a specialist until July 2022, when B. Omandac referred him to the URP. *Id.* The URP approved this request and Santacruz saw Dr. Richard Wulff in July 2022, which was the first time he had seen an orthopedic specialist since he had been incarcerated. *Id.* at 10. Dr. Wulff referred Santacruz to an outside specialist, Dr. Michael Monroe, which the URP approved. *Id.*

Starting in September 2022, and throughout 2023, Santacruz had several appointments with Dr. Monroe, who diagnosed Santacruz with left shoulder rotator cuff syndrome, right foot drop, right equinus contracture of the foot, back pain, and leg length discrepancy. *Id.* Dr. Monroe noted that Santacruz had "not gone to physical therapy or had injections." *Id.* Dr.

8

Monroe gave Santacruz injections, recommended physical therapy, and "sought regular follow-up visits." *Id.* at 10-11. In December 2023, Dr. Monroe recommended a left shoulder arthroscopic debridement and a tendon surgery to address the drop foot and claw toe issues. *Id.* at 11. The URP approved both surgeries in December 2023. *Id.* However, as of June 2024, neither surgery had taken place. *Id.*

Santacruz alleges that he was experiencing regular pain from his leg issues, and his claw toes had become "so bad they bled." *Id.* at 9. Santacruz submitted a series of kites around this time advising of his injuries and pain and stating that the prison medical providers had not adequately addressed his conditions throughout his incarceration. *Id.* He alleges that the orthopedic equipment he was given, such as a brace, shoes, or a walking implement, were insufficient to address his needs, as shown by his "progressively worsening pain and history of falls despite these superficial interventions." *Id.* at 10. He alleges that "the minimum standard of care would have been to refer him to a specialist." *Id.*

Santacruz alleges that defendants Sanchez, Landsman, Agustin, B. Omandac, and S. Omandac each treated Santacruz over many months and years, but his condition progressively worsened, and the defendants were aware of his worsening condition because he repeatedly advised them of that fact, he suffered two falls in short succession resulting in further injuries, and his claw toes worsened to the point they bled. It is reasonable to infer these medical providers would review his history of prior treatment and the efficacy, or lack thereof, of prior medical interventions. And he alleges that despite his worsening condition, they did nothing but make superficial adjustments to his orthopedic equipment that did not fit correctly and frequently broke. According to the SAC, it took five years after Santacruz was transferred to SDCC in 2017 for his first referral to an outside orthopedic specialist, who noted the lack of certain

9

treatments, such as injections and physical therapy, and ordered those treatments and recommended surgeries. Santacruz thus has plausibly alleged that these defendants were aware of and disregarded an excessive risk to Santacruz's health. *Stewart v. Aranas*, 32 F.4th 1192, 1194 (9th Cir. 2022) ("Mere disagreement with a medical treatment plan is not deliberate indifference. But continuation of the same treatment in the face of obvious failure is."). I therefore deny the motion to dismiss count one to the extent the defendants argue that Santacruz has not plausibly alleged a violation under either the U.S. or Nevada Constitutions.

Additionally, with respect to qualified immunity for the federal claims, the law these defendants allegedly violated was clearly established at the time they interacted with Santacruz. When faced with similar facts, the Ninth Circuit found clearly established law indicating the prison officials' actions violated the prisoner's Eighth Amendment right against cruel and unusual punishment. In *Stewart v. Aranas*, prison officials gave medication to a prisoner suffering from difficult, painful urination. *Id.* Although he continued to complain of severe pain and his condition deteriorated, prison officials did not change his treatment plan until the prisoner suffered a severe incident and required emergency care. *Id.* Following this incident, he was diagnosed with stage three kidney disease, among other ailments. *Id.* at 1194-95. The Ninth Circuit denied the prison officials qualified immunity because even though there was no "case on all fours with the factual context presented," there was clearly established law that denying treatment can constitute an Eighth Amendment violation and delaying treatment can violate the constitution where the delay injures the prisoner. *Id.* at 1195.

As the Ninth Circuit explained, "[a]t some point 'wait and see' becomes deny and delay." *Id.* The Ninth Circuit also stated that officials "violate the constitution when they persist in a treatment known to be ineffective." *Id.* While the Ninth Circuit decided *Stewart* after some of

10

these defendants acted (or failed to act), the cases the Ninth Circuit looked at to determine that the law was clearly established predate their actions.[3] Additionally, other Ninth Circuit cases indicate it was clearly established that delaying a prisoner's diagnostic testing or medical treatment is deliberate indifference where that delay leads to injury. *See Jett*, 439 F.3d at 1094-95, 1097-98 (finding a triable issue of fact regarding a doctor's deliberate indifference when a prisoner did not see an orthopedic doctor to set his broken bone for over six months, leading to improper healing, though the prisoner continuously complained of pain and requested follow-up); *Farley v. Capot*, 384 F. App'x 685, 686-87 (9th Cir. 2010) (holding the district court erred in dismissing a deliberate indifference claim against a physician whose unexplained actions caused a two-month delay in the prisoner's cancer surgery, leading to further serious harm and unnecessary pain); *Egberto v. Nevada Dep't of Corr.*, 678 F. App'x 500, 503-04 (9th Cir. 2017) (finding a genuine issue of material fact regarding prison official's deliberate indifference when an MRI ordered for prisoner's back pain was delayed six months and, drawing all reasonable inferences in the prisoner's favor, his back conditioned worsened). Consequently, the law was clearly established at the time of these defendants' actions or omissions, and I deny them qualified immunity at this stage of the proceedings. In sum, I deny the defendants' motion to dismiss Santacruz's federal and state law claims in count one as to Sanchez, Landsman, Agustin, B. Omandac, and S. Omandac.

---

[3] *See Colwell*, 763 F.3d at 1066 (explaining that prison officials can be deliberately indifferent by denying, delaying, or intentionally interfering with medical treatment); *Shapley*, 766 F.2d at 407 (explaining that delaying medical care can be deliberately indifferent if the denial is harmful); *Snow v. McDaniel*, 681 F.3d 978, 988 (9th Cir. 2012), *overruled on other grounds by Peralta v. Dillard*, 744 F.3d 1076, 1083 (9th Cir 2014) (finding that a reasonable jury could conclude that the prison physician's decisions to continually deny specialists' surgery recommendations while the prisoner deteriorated and experienced adverse side effects from medication were "medically unacceptable under all of the circumstances").

11

### ii. Williams

The SAC alleges that Williams was NDOC's medical director and a member of the URP who was aware that (1) the URP approved the surgeries in December 2023 and (2) the surgeries still had not happened as of June 2024. ECF No. 47 at 4, 9, 11. Because Williams was on the URP, it is plausible that Williams would have been aware of the prior requests for referrals and treatment for Santacruz and thus would know about his worsening condition, the need for the surgeries, and the six-month delay in the surgeries after the December 2023 approval. *Id.* at 11. It is reasonable to infer that as NDOC medical director, Williams had some ability to ensure the surgeries took place within a reasonable amount of time, but he allegedly did not do so. That suffices at this stage and, for the reasons discussed above, would violate clearly established law. *See, e.g., Egberto*, 678 F. App'x at 503-04.

### iii. Oliver

The SAC does not allege when (or even if) SDCC Warden Oliver learned of Santacruz's medical condition, lack of treatment, or that a surgery was approved in December 2023 and still had not been performed by June 2024. The SAC states in conclusory fashion that Oliver was "aware of this delay," but it alleges no facts to support that conclusion. Nor is it reasonable to infer merely from Oliver's position as warden that he was familiar with Santacruz's medical conditions and treatment. I therefore dismiss count one against Oliver, with leave to amend. *See Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma Cnty.*, 708 F.3d 1109, 1118 (9th Cir. 2013) ("As a general rule, dismissal without leave to amend is improper unless it is clear that the complaint could not be saved by any amendment." (simplified)). Because I am granting leave to amend, I consider below whether Santacruz's claims in count one are barred by the statute of limitations.

/ / / /

### b. *Gastrointestinal Issues*

Santacruz alleges that in 2019, he was referred to an outside gastrointestinal specialist who prescribed Linzess for his chronic constipation. ECF No. 47 at 13. Defendant Landsman filled out a "Non-Formulary Drug Request" for Linzess in early September 2019. *Id.* at 13-14. However, it is unclear whether Landsman's request was approved or denied, or who decided not to provide it. *Id.* According to the SAC, Landsman made a note in Santacruz's medical file that "appears to state that a 'committee' declined Linzess." *Id.* at 14. However, according to the SAC, the URP's decision notes regarding Santacruz do not refer to a request for Linzess. *Id.* Thus, Santacruz sues Landsman for not requesting Linzess or, alternatively, John Doe medical providers for denying Landsman's request. *Id.* Santacruz continued to send medical kites asking for Linzess but was given boilerplate responses about wait times that did not inform him that Linzess had been denied. *Id.* "For years afterwards," Santacruz "continued to suffer and report pain and chronic constipation from his gastrointestinal disease," but was given only ineffective over-the-counter medications without "Defendants" ever reconsidering the decision to deny him Linzess. *Id.*

As an initial matter, it is unclear who this claim is against. The SAC alleges in blanket form that "Defendants" never reconsidered the decision to deny Linzess. But when B. Omandac moved to dismiss this claim, Santacruz responded that she was not a defendant in count two. *See* ECF Nos. 52 at 20-21; 54 at 13. Santacruz represented in his opposition brief that this claim was against only "Landsman and/or two unknown 'John Doe' Defendants [who] denied Mr. Santacruz Linzess." ECF No. 54 at 13. I therefore construe this claim as if it is asserted only against Landsman and John Does. I do not address in this order John Does not presently before the court.

The SAC alleges that an outside provider prescribed Linzess in 2019 and that in September 2019, Landsman either requested the Linzess be prescribed, which would not show deliberate indifference, or he failed to do so, which might be deliberate indifference, but it also might be negligence or a decision to treat with over-the-counter medications. The SAC alleges, without specifying when or by whom, that Santacruz was given over-the-counter medications to treat his gastrointestinal issues. The SAC does not sufficiently allege that at the time that Landsman treated Santacruz, it was medically unacceptable to prescribe over-the-counter medications instead of Linzess. According to the SAC, Linzess was prescribed in September 2019 and Landsman stopped treating Santacruz in 2019. Thus, Santacruz's allegation that for "years afterwards" he continued to complain about pain and chronic constipation, thus suggesting the over-the-counter medications were not effective and the decision to deny Linzess should be reconsidered, would have taken place after Landsman stopped seeing Santacruz. Consequently, I dismiss count two as to Landsman. However, I grant Santacruz leave to amend if facts exist to do so. Because I am granting leave to amend, I consider the defendants' arguments that count two is barred by the statute of limitations and by a failure to exhaust administrative remedies.

### B. Statute of Limitations

The defendants argue that Santacruz's claims are time-barred because he alleges the SDCC medical staff were aware of his medical needs but have not provided adequate treatment since his transfer to SDCC in 2017. They note that he filed a grievance related to these allegations, which he exhausted through the prison's administrative remedies as of October 5, 2018. They assert that because the complaint was filed more than two years after he fully exhausted this grievance, his claims are time-barred.

Santacruz responds that this is an affirmative defense that should not be decided at dismissal. He contends that when his claims accrued is a question of fact, as is whether tolling applies during the time his grievance was pending. Alternatively, he argues that because his claims are based on an ongoing violation of his civil rights arising out of the failure to treat his conditions over a period of years, the limitation period has not run.

In reply, the defendants contend that the Ninth Circuit has held that there is no continuing violation doctrine for deliberate indifference claims. They also argue that Santacruz alleges continuing impact from past violations, not continuing violations. They also argue there is no dispute as to accrual because Santacruz stated in his grievance that the medical department was deliberately indifferent to his medical needs, showing he knew of his claim, so the limitation period began to run when he exhausted his administrative remedies on October 5, 2018.

"A claim may be dismissed as untimely pursuant to a 12(b)(6) motion only when the running of the statute of limitations is apparent on the face of the complaint." *Thomas v. Cnty. of Humboldt, Cal.*, 124 F.4th 1179, 1191 (9th Cir. 2024) (quotation omitted). "Section 1983 does not contain its own statute of limitations." *Id.* (quotation omitted). Instead, § 1983 claims borrow the forum state's statute of limitations for personal injury claims. *Id.* In Nevada, that period is two years. Nev. Rev. Stat. § 11.190(4)(e). Thus, Santacruz's federal and state constitutional claims are governed by a two-year limitation period.

Although the limitation period is borrowed from state law, federal law governs when a § 1983 claim accrues. *Klein v. City of Beverly Hills*, 865 F.3d 1276, 1278 (9th Cir. 2017). "Under federal law, a claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Id.* (quotation omitted). "A plaintiff must be diligent in discovering the critical facts." *Gregg v. Hawaii, Dep't of Pub. Safety*, 870 F.3d 883, 887 (9th Cir.

2017) (quotation omitted). The "question of when a claim accrues is a fact intensive inquiry." *Pouncil v. Tilton*, 704 F.3d 568, 574 (9th Cir. 2012).

Resolving the statute of limitations affirmative defense is inappropriate at this stage because there are fact questions that cannot be resolved from the face of the SAC regarding accrual and tolling. As just one example, the defendants contend that Santacruz's claims accrued as of October 2018, which is before some of them had even started treating him and before the prescription for Linzess had even been written. I therefore deny the motion to dismiss on statute of limitations grounds.

However, it appears that Santacruz may face substantial hurdles in overcoming the statute of limitations for many of his claims against several of the defendants. Although I do not at this time address the viability of the continuing violation doctrine in relation to a deliberate indifference claim, I note that the Ninth Circuit has suggested that the doctrine has narrow application. *See Bird v. Dep't of Hum. Servs.*, 935 F.3d 738, 746-49 (9th Cir. 2019). Further, I remind Santacruz that § 1983 claims require a defendant's personal participation for that defendant to be liable. *See Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002); *Bynum v. Correct Care Sols., LLC*, No. 21-16254, 2023 WL 2134397, at *3 (9th Cir. Feb. 21, 2023) (affirming summary judgment in the defendants' favor on a deliberate indifference claim because the plaintiff "failed to address each nurse named in the complaint, and for the nurses that she did address, she failed to adduce evidence to support her contention that any one nurse was deliberately indifferent"). Santacruz should carefully consider whether he can timely pursue each of his claims against each defendant when he crafts a third amended complaint, if he chooses to do so.

/ / / /

### C. Exhaustion of Administrative Remedies

The defendants argue that count two should be dismissed for failure to exhaust administrative remedies. Santacruz responds that failure to exhaust is an affirmative defense that should not be resolved at dismissal. Alternatively, he argues that the grievance that the defendants admit was fully exhausted included gastrointestinal issues. Santacruz also argues that administrative remedies are not available because he was threatened with retaliation for pursuing relief and when he tried to file another grievance, he was told it was untimely and not to resubmit it.

In reply, the defendants note that the prior grievance could not have exhausted Santacruz's administrative remedies because count two is based on the denial of Linzess that was prescribed in September 2019, nearly a year after the grievance was fully exhausted. They also argue the grievance process was available to Santacruz, as shown by his fully exhausted grievance related to count one.

I deny the motion to dismiss based on lack of exhaustion. Failure to exhaust is an affirmative defense that the defendants have the burden to plead and prove. *Albino v. Baca*, 747 F.3d 1162, 1168 (9th Cir. 2014) (en banc). Although there may be a case where "a prisoner's failure to exhaust may be clear from the face of the complaint[,] . . . such cases will be rare because a plaintiff is not required to say anything about exhaustion in his complaint." *Id.* Typically, a defendant will have to present evidence to show lack of exhaustion, meaning the defense is more appropriately presented in a summary judgment motion rather than one to dismiss. *Id.* at 1168.

The defendants try to sidestep this procedure by suggesting that I can take judicial notice of documents filed elsewhere on the docket because those documents were submitted "subject to

the requirements of Fed. R. Civ. P. 11" and because NDOC prison records are regularly presented to the court so I can determine "upon visual inspection [] what they are purported to be." ECF No. 57 at 2-3. But when resolving a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), review is generally "limited to the complaint." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (quotation omitted). I may consider documents physically attached to the complaint, documents that are not physically attached to the complaint if their authenticity is not questioned and the complaint necessarily relies on them, and matters subject to judicial notice. *Id.* at 688-89. The documents the defendants refer to do not fall within any of these categories. None is attached to the SAC. The defendants have not explained how the SAC necessarily relies on Santacruz's grievance history. And NDOC's records and the factual assertions contained within those records are not subject to judicial notice. I therefore decline to consider these documents in connection with a motion to dismiss. If the defendants want to pursue a failure to exhaust defense, they must do so through a properly submitted and supported motion for summary judgment. Consequently, I do not find at this stage that it would be futile for Santacruz to amend as to count two.

## II.  CONCLUSION

I THEREFORE ORDER that the defendants' motions to dismiss **(ECF Nos. 52, 69) are GRANTED in part**, with leave to amend.

I FURTHER ORDER plaintiff Gabriel Santacruz's unopposed motion to extend time **(ECF No. 78) is GRANTED**.

DATED this 16th day of February, 2025.

ANDREW P. GORDON
CHIEF UNITED STATES DISTRICT JUDGE